

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 AUG 15 P 4: 21

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| K. TRACY BERGQUIST,<br>on behalf of herself and all other<br>shareholders of FyBX Corporation | * | |
| | * | |
| | * | |
| | * | |
| **Plaintiff** | * | |
| v. | * | **Civil Action No.** |
| | * | |
| FyBX CORPORATION, MICHAEL<br>P. ARATA, HOFFMAN, SIEGEL,<br>SEYDEL, BIENVENU, CENTOLA<br>& CORDES (A PROFESSIONAL<br>LAW CORPORATION), and<br>BORDELON, HAMLIN & THERIOT | * | **02-722** |
| | * | |
| | * | **SECTION "R (4)** |
| | * | |
| | * | |
| | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## MOTION FOR SANCTIONS
## PURSUANT TO RULE 11 AND 28 U.S.C. §1927

Now comes defendants, Michael P. Arata and Hoffman, Seigel, Seydel, Bienvenu, Centola

& Cordes, who move this Honorable Court, pursuant to Rule 11 of the Federal Rules of Civil

Procedure, and 28 U.S.C. §1927, to enter an order sanctioning the plaintiff, Tracy Bergquist, and

their counsel, and award defendants, Michael Arata and Hoffman, Seigel, Seydel, Bienvenu, Centola

and Cordes, the costs and attorneys fees they have incurred and any other relief the court deems

___ Fee_____
X  Process__
___ Dktd____
___ CtRmDep___
___ Doc. No._____

proper, equitable and just, as more fully set forth in the attached supporting memorandum. Defendants' attorneys filed the present Motion for Sanctions, and the accompanying memorandum, more than 21 days after July 3, 2003, the date defendants', Michael Arata and Hoffman, Seigel, Seydel, Bienvenu, Centola and Cordes, attorneys served their Motion for Sanctions and Supporting Memorandum, by facsimile on Kevin Armbruster, Leticia Alfonso, and Donald Hyatt and U. S. Mail to all other counsel.

Respectfully submitted,

**DEUTSCH, KERRIGAN & STILES, L.L.P.**


BY: _____

    **NANCY J. MARSHALL  (#8955)**
    **ANNE B. RAPPOLD (#26829)**
    755 Magazine Street
    New Orleans, Louisiana  70130
    Telephone:  (504) 581-5141
    Counsel for **Michael P. Arata and Hoffman,**
    **Seigel, Seydel, Bienvenu, Centola & Cordes**


## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this _____ day of August, 2003.


_____

- 2 -

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| K. TRACY BERGQUIST,<br>on behalf of herself and all other<br>shareholders of FyBX Corporation | * | |
| | | |
| **Plaintiff** | * | |
| v. | * | Civil Action No. |
| | * | |
| FyBX CORPORATION, MICHAEL<br>P. ARATA, HOFFMAN, SIEGEL,<br>SEYDEL, BIENVENU, CENTOLA<br>& CORDES (A PROFESSIONAL<br>LAW CORPORATION), and<br>BORDELON, HAMLIN & THERIOT | * | 02-722<br><br>SECTION "R (4) |
| | * | |
| **Defendants** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * **

## MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS
## PURSUANT TO RULE 11 AND 28 U.S.C. 1927

This memorandum is filed by defendants Michael Arata and Hoffman, Siegel, Seydel,

Bienvenu, Centola & Cordes (hereinafter "Arata" and "Hoffman") in support of their Motion for

Sanctions pursuant to Fed. R. Civ. P. 11, 28 U.S.C. 1927, and the inherent power of this Court to

maintain the dignity and integrity of the judicial process.

## I.    FACTS

### A.    Introduction

The claims set forth in plaintiff's complaint and amended complaint, and in the pleadings, motions and other papers filed in pursuit of these claims, have no evidentiary support, are not warranted by existing law or good faith argument for the modification, extension or reversal thereof, and were filed to extort funds out of defendants Arata and Hoffman. Each cited defect of plaintiff's pleadings illuminates the improper purpose behind the present litigation, thereby requiring sanctions under Rule 11, 28 U.S.C. §1927, and the inherent power of the Court.

### B.    Factual Background

The lawsuit against Michael Arata arises out of his representation of FyBX Corporation ("FyBX"), as a second year associate in the Bordelon, Hamlin firm in 1995. He and Regina Wedig prepared the incorporation papers for FyBX in June 1995. The Articles of Incorporation and other documents were filed with the Secretary of State on July 11, 1995. On September 25, 1995, the three directors of FyBX, Ratowsky, Farris and Hondroulis, who were also the three incorporators and only shareholders, unanimously voted to increase the number of authorized shares from 20,000 to 2,000,000. However, neither Arata nor Wedig filed the amendments to the Articles of Incorporation with the Secretary of State.

In January 1997, the same three directors and shareholders amended the Articles of Incorporation to increase the number of directors from three to five. Again, the amendments to the Articles of Incorporation were not filed with the Secretary of Sate. After the Articles of Incorporation were amended, Andrew Barletta was added as a fourth director.

- 2 -

In March 1998, two directors, Farris and Ratowsky, resigned, leaving Barletta and Hondroulis as the remaining directors. In a May 1998 meeting, Hondroulis and Barletta voted in plaintiff Tracy Bergquist and Atul Wad as directors to fill Ratowsky's and Farris' remaining terms. At that same meeting, it was agreed that FyBX would merge with FyBX Environmental, which was 75% owned by FyBX and 25% owned by plaintiff and her husband, Neville Kingham. The agreement of merger provided that Tracy Bergquist would receive 380,000 shares of stock in the merged companies. She received those shares of stock on July 1, 1998. However, the merger documents were not filed with the Secretary of State until August 2, 1999.

Plaintiff contends that the failure to file the amendments to the Articles of Incorporation in 1995 and 1997 and the issuance of Bergquist's merger shares prior to the merger documents being filed resulted in her shares of stock being invalidly issued. Flowing from these invalid shares of stock, she alleges that FyBX shareholders have claims for violations of federal and Georgia securities law, Georgia RICO violations, and legal malpractice.

When plaintiff brought these issues to the attention of FyBX and Arata, immediate offers were made to attempt to rectify and ratify any problems that plaintiff perceived. These offers were rejected. *See* Exhibit A and B attached (exhibits to complaint and amended complaint). Instead, plaintiff chose to file this complaint and amended complaint, refusing to work with the corporation and Arata to perform *any* remedial actions for the alleged problems. No matter what remedial measures or arguments defendants have suggested, plaintiff has made it clear that she is only interested in extracting money out of Arata and out of FyBX. Plaintiff has obstructed each argument put forth to validate the actions by the directors and the corporation, going so far as to move for a

temporary restraining order to prevent the very shareholders' meeting that she has repeatedly claimed that the defendants needed to hold, and should have held to ratify the directors' actions.

As will be set forth more fully, and as has been set forth in the many memoranda in support of the motions for summary judgment, there are many ways in which the actions taken by the corporation could be found valid, and/or that they have been impliedly and explicitly ratified by the corporation, eliminating the need for this lawsuit. Nonetheless, plaintiff has persisted in this lawsuit, even after more than 99% of the shareholders ratified the very acts of which she complains. Such unwarranted persistence, and the enormous costs and fees associated with it, require that the Court impose sanctions.

## II.  ARGUMENT

### A.  The Court Should Sanction Bergquist under Rule 11

#### 1.  Applicable standards

Rule 11(b) provides that by presenting to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that, to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for

further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

With respect to Arata, plaintiff has alleged three negligent acts on his part that resulted in the invalidity of her shares: the failure to file the 1995 and 1997 amendments to the Articles of Incorporation, and the failure to timely file the merger documents with the Secretary of State. It is clear that the plaintiff herself delayed the filing of the merger documents, i.e., she was deciding whether to go ahead with the merger agreement or to simply dissolve FyBX Environmental Corporation, because of tax considerations. (See Minutes of September 21 - 24, 1998 director's meeting, Exhibit C) She was certainly aware at all times that her shares of stock had been issued to her prior to the merger agreement.

This request for sanctions arises, in part, from plaintiff's filing of pleadings which she and/or her attorneys have certified that, to the best of their knowledge, information and belief, and formed after an inquiry reasonable under the circumstances, are:

A.  Not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

B.  Contain claims and other legal contentions that are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; or

C.  Contain allegations and other factual contentions that have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. Proc. 11(b)(1), (2), (3). Plaintiff must satisfy each of these obligations or be subject to sanctions. *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999). Moreover, "the standard

under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances". *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

Defendants recognize that the Fifth Circuit does not impose a continuing obligation on a signing attorney, under Rule 11 (and derivatively, under 28 USC § 1927), to review and reevaluate his position as the case develops, *see Thomas v. Capital Security Services, Inc.*, 836 F.2d 866, 874 (5th Cir. 1988)and *In Re Taxable Municipal Bond Securities Litigation* 1994 WL 34924 (2/3/94 E.D. La.), *aff'd.*, 51 F.3d 518 (5th Cir. 1995). However, the Fifth Circuit has recognized that "as a practical matter, [the *Thomas* decision] was not a significant change [as] [v]irtually all suits will require *a series of filings* and Rule 11 applies *to each and every paper signed during the course of the proceedings.*" *Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1024 n. 18 (5th Cir. 1994) (emphasis added). Further, the Fifth Circuit recognizes that "*an attorney's duty under Rule 11 is particularly important in RICO cases since they involve claims of repeated criminal activity.*" *Chapman & Cole v. Itel Container Int'l B.V.*, 865 F.2d 676, 685 (5th Cir. 1989), *cert. denied*, 493 U.S. 872, 110 S. Ct. 201, 107 L. Ed. 2d 155 (1989) (emphasis added). *See also In Re Taxable*, 1994 WL 34924 (E.D. La.) at * 6, *aff'd.*, 51 F.3d 518 (5th Cir. 1995).

The 1993 amendments to Rule 11 explicitly include subsequent advocacy of a pleading as conduct subject to Rule 11 sanctions. *See* Fed. R. Civ. Proc. 11(b) (West 1997) ("By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, . . ."). Thus, with the filing of every paper in court, and later advocating in connection with the court filed papers, an attorney, his law firm and the party represent to the court, particularly in RICO claims, that the claims asserted (1) are not being presented for any improper purpose, (2) are warranted by existing law or a good faith argument for the modification, extension or reversal

- 6 -

thereof, and (3) have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

In *Childs*, the Fifth Circuit affirmed the entry of sanctions under Rule 11 in the amount of $30,000 against plaintiff's attorney. *Id.* at 1020. There the plaintiff's attorney filed and pursued an action seeking uninsured motorist coverage benefits and bad faith damages against the defendant-insurer after plaintiff allegedly was run off the road in the middle of the night by a "phantom" vehicle. *Id.* at 1020-21. During discovery, the defendant-insurer obtained evidence that the plaintiff had participated or was involved in numerous "phantom" accidents which were strikingly similar to the present complained of incident. A pattern emerged in which all of the alleged victims in those accidents were protected by numerous insurance policies. *Id.* at 1021. Additionally, the defendant-insurer uncovered evidence indicating that the accident could not have happened as claimed by the plaintiff. *Id.* at 1021-22. After development of this evidence, the defendant-insurer moved for leave to amend its answer to allege fraud, and filed a counterclaim seeking reimbursement for medicals already paid to the plaintiff. *Id.* at 1022. Plaintiff's attorney routinely opposed defendant's motion for leave, and opposed the defendant's counterclaim. *Id.* at 1022. After a jury quickly found that plaintiff had committed fraud by staging the accident, the defendant-insurer moved for sanctions under Rule 11. *Id.* The district court entered sanctions against plaintiffs' counsel for $30,000.00 and the Fifth Circuit affirmed. *Id.* at 1020, 1029.

In the *Childs'* opinion, the Fifth Circuit found that plaintiff's counsel had conducted a reasonable inquiry at the time he filed the action. *Id.* However, the Fifth Circuit stressed that it was the *post-filing inquiry* which was woefully insufficient and unreasonable. *Childs*, 29 F.3d at 1025-26. The court explained as follows:

[t]he district court herein concluded that the evidence of fraud developed by [the defendant-insurer] was clear and overwhelming. In light of that substantial evidence, the district court found that the investigation conducted by [plaintiff's counsel] to establish his client's claim was well-grounded in fact was not reasonable. We [affirm].

. . . .

[W]hile [the evidence] was being developed, [plaintiff's counsel] could not just cling tenaciously to the investigation he had done at the outset of the litigation and bury his head in the sand.

*Id.* at 1024-25. Thus, although the filing of the lawsuit was not sanctionable, the pursuit of these claims after the overwhelming evidence of fraud came to light was sanctionable.

The *Childs* holding and rationale applies with even more force to the present proceeding. Plaintiff and her counsel have willfully or recklessly ignored the evidence and, instead, decided to heighten their groundless attack on Arata and Hoffman. At every opportunity, plaintiff and her counsel have attempted to block the most basic of corporate action by FyBX. The willful or reckless absence of any such evidence, and the enormous burdens the present litigation have imposed on defendants, compel the conclusion that sanctions are the proper remedy to enter against plaintiff and her counsel. Finally, discovery conducted in this case has made apparent that there is no justification for the present course of litigation. No legal theory sustains plaintiff's ill-advised course of litigation directed against defendants.

Plaintiff, therefore, has represented to this court through the claims asserted in her amended complaint, motion for summary judgment, opposition to motion for summary judgment, reply memoranda and motion for a TRO that she had, in fact, evidentiary support for her allegations, that they were warranted by existing law or a good faith argument for modification thereof, and that they were not being presented for any improper purpose. Accordingly, the allegations made and

subsequent activities of plaintiff and her counsel would meet the standard for sanction-worthy conduct under FRCP Rule 11. The activities also, therefore, meet the standards for the imposition of sanctions on other grounds.

### 2. Plaintiff Never Had, and Still Does Not Have, Evidentiary Support for Her RICO Claims.

Plaintiff has never had a basis for her RICO claims as has been set forth in Arata's Motion for Summary Judgment, and memoranda in support of that motion and in opposition to plaintiff's Motion for Summary Judgment, all of which are included by reference. Second Circuit courts have levied sanctions, without hesitation, upon determining that the RICO litigation at issue had no basis in fact or was misguided. *See O'Malley v. New York City Transit Authority*, 896 F.2d 704, 709 (2nd Cir. 1990) (holding that lack of clarity in field of RICO law did not shield baseless RICO claim from Rule 11 sanctions); *Asbeka Industries v. Travelers Indemnity Co.,* 831 F. Supp. 74, 90-91 (E.D.N.Y. 1993) (stating that entry of Rule 11 sanctions in RICO case required to enforce realization that not every business letter placed in a postal box constitutes mail fraud). This Court can employ the same logic and rationale as grounds for sanctioning plaintiffs and their counsel in the present proceeding. Fed. R. Civ. Proc. 11, Advisory Committee Notes (1993 Amendments) ("[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention.")

### 3. Plaintiffs' Claims Were, and Are, Not Warranted by Existing Law or a Good Faith Argument for the Modification, Extension or Reversal Thereof

The Fifth Circuit has repeatedly held that, to satisfy the requirement of Rule 11, claims must be warranted by existing law or a good faith argument for the modification, extension or reversal

thereof, and attorneys must make a reasonable inquiry into the facts which support the claims. *Childs*, 29 F.3d at 1024. Claimed good faith is not enough to protect an attorney from sanctions. *Id.* *(See also, Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119, 1127 (5th Cir. 1987). Under the described objective test, plaintiff has woefully failed to submit any controlling, governing or persuasive authority that defendants are even potentially liable to plaintiff.

### a.    The 1995 and 1997 Amendments

As has been set forth in defendants Arata and Hoffman's summary judgment memoranda, the 1995 amendments can be found to have been validly enacted pursuant to LSA R.S. 12:33(B) and (E). Plaintiff has argued strenuously that the presence of Dr. Ronald Whitmire's name on the stock register, indicating stocks issued on September 17, 1995, means that it was not a unanimous decision. However, defendants have provided evidence of the fact that the first funds received from Whitmire were a check on October 17, 1995, and thus that no shares had been issued to him or could have been issued to him on September 17, 1995. Further, even the presence of Dr. Whitmire would not preclude the fact that more than two-thirds of the shareholders had voted to increase the authorized shares, and that pursuant to the requirements of FyBX's Articles of Incorporation, there was a unanimous decision by the Board of Directors. Moreover, defendants have cited numerous cases establishing the doctrine of acquiescence as a means of ratification. Alternatively, the filing of the 1996 merger agreement between AE Natural and FyBX referenced an agreement of merger, which specifically stated that there were 2,000,000 shares of Class A Common Stock, and thus, pursuant to La. R.S. 12:115 provides:

>    F.    In the case of a merger, the Articles of the surviving business corporation shall be deemed amended to the extent of any changes therein stated in the merger agreement.

Further, pursuant to R.S. 12:76, Consent of Shareholders, the Consent need be only signed by shareholders holding that proportion of the total voting power on the question which is required by the Articles or by-laws, whichever requirement is higher. La. R.S. 12:112(C)2 provides that a merger agreement must be approved by the shareholders of each business corporation of that at least two-thirds of the voting power present, not an amendment. There was certainly two-thirds of the voting power present for this amendment, and for the 1997 amendment.

Finally, in *Thornton vs. Lanehart,* 723 So. 2d 1118 (La. App. 1st Cir. 1998), a minority shareholder sued the majority shareholder directors for several actions taken by the board including: increasing the directors' salaries; issuing and selling *unauthorized shares of stock* (emphasis added); issuing large employee bonuses; and, authorizing payment of a very small dividend on outstanding shares.

The *Thornton* plaintiff also complained that the Board of Directors that instituted these actions was improperly constituted because there was only one director present, and the relevant statute required the presence of three directors. The First Circuit held that this deficiency was not fatal: "these actions were not void, but voidable, and could be ratified by the shareholders. Such ratification could be implied by acquiescence." The Court went on to note that:

> Although Thornton argues that he clearly did not acquiesce in the specific actions taken by the Laneharts, he is only one shareholder. His opposition constitutes only one vote out of three. A majority of the shareholders acquiesced in the actions taken by the two person Board, and Thornton acquiesced in the way the Board was constituted when these decisions were made. We agree with the trial court that the actions of the Laneharts were not void simply because they were acting as a two person Board of Directors.

Like *Thornton*, plaintiff here acquiesced in the actions of the Board of Directors that passed the merger; the same Board of Directors in which she served for several years before this lawsuit.

Finally, it was the clear intention of the majority of shareholders of FyBX to ratify the actions taken by the Board in 1995 and 1997 with regard to the amendments to the articles and the merger of FyBX and FyBX Environmental. Accordingly, plaintiff's shares are valid, and she has suffered no harm. Numerous other cases have been cited, *Dunham vs. Dunham,* 336 So. 2d 337 (La. Ct. App. First Cir. 1976), *Davidson vs. American Paper Manufacturing Co., Inc.,* 175 So. 753 (La. 1937), which speak to the failure to comply with technical requirements, and specifically the failure to file an amendment to the Articles of Incorporation with the Secretary of State. These cases held that the failure to comply with technical requirements does not void the acts of the corporation. These cases were equally available to plaintiff before the filing of this lawsuit, and should have prevented the entire litigation that has taken place over the past two years.

In particular, there is a specific case that holds valid the acts taken by a Board of Directors with more directors than authorized by the Articles of Incorporation. In the case of *Smith vs. Bayou Rentals, Inc.,* 345 So. 2d 1229 (La. App. First Cir. 1997), the question of invalidly elected directors, "de facto" directors, was considered, and the Court held that the five persons who are elected as directors, despite the fact that the Articles of Incorporation only provided for three directors, remained in that capacity until removed by proper corporate action. The *Smith* court upheld the validity of those directors' acts.

Plaintiff also raised the argument that Wad and Bergquist, added as directors in May, 1998, were improperly added, because of the fact that Hondroulis' term of office had expired. Hondroulis had been a director since the inception of the corporation. However, R. S. 12:81(A) requires that the

directors of the corporation shall hold office for one year, and until all their successors are chosen and have qualified. "And" is a conjunctive term, and thus all requirements must be met. That is, the directors shall hold office for one year, *and* until the successors are chosen and have qualified. None were chosen or qualified in 1998, so Hondroulis continued as a director, and had the right to replace other directors whose terms had expired. Plaintiff also ignored the case of *Mt. Gidian Baptist Church vs. Rubin*, 812 So. 2d 758 (La. App. 1ˢᵗ Cir. 2002), which applied R. S. 12:81(A), the corporate statute for non-profit corporations, in just this manner.

The merger agreement provided that plaintiff's 380,000 shares were to be issued pursuant to the merger. Plaintiff's complaint is that her 380,000 shares were issued prior to the merger documents being filed. First, there are issues as to who prepared the merger documents, but those issues do not preclude a finding that Bergquist knew that the merger documents had not been filed. Arata testified that he prepared the corporate resolutions for FyBX and FyBx Environmental Corporations' merger. Hondroulis testified that Bergquist prepared the Agreement of Merger and Plan of Merger. Secondly, it is quite clear that the plaintiff knew that the merger documents had not been filed as of the time that she received her shares. There was an explicit discussion about the decision about whether to merge FyBX and FyBX Environmental or whether to simply dissolve FyBX Environmental in the September 21, - 24, 1998 minutes. *See* Exhibit C . Further, there is an e-mail copied to Bergquist in March 1999 from Wad directing that Arata should review the merger documents and that they should be sent to him. *See* Exhibit D. Clearly then, as of March, 1999, plaintiff knew that the merger documents had not been filed, although her "merger shares" had been issued to her in July, 1998.

No one has sought to hold that the 380,000 shares issued to Bergquist in July, 1998 are invalid, except Bergquist. Again, the doctrine of ratification by acquiescence certainly applied to the issuance of those shares to Bergquist.

Finally, on June 19, 2003, a shareholders' meeting was held. A notarized copy of the minutes of that meeting are attached. *See* Exhibit E. They reflect that the shareholders overwhelmingly voted in favor of an explicit ratification of the Board's prior acts that are complained of by Bergquist. Specifically, the shareholders approved the ratification of the amendment increasing the number of directors from three to five, increase the authorization of 3,000,000 shares and the authorization of additional shares up to 50,000,000 shares, approving the elimination of preemptive rights on the parts of shareholders, and ratifying the issuance of any shares of stock issued pursuant to mergers between FyBX, FyBX Environmental or AE Natural. These arguments are set forth in defendants' motion for summary judgment and in opposition to plaintiff's motion for summary judgment and are adopted as reasons for the validity of the shares issued to Tracy Bergquist and the fact that she had no basis for arguing that her shares were invalid. The explicit ratification by more than 99% of the shareholders voting, makes it clear that there is no question as to the validity of Bergquist shares.

Plaintiff has alleged 10b-5 claims, § 12(2) claims, Georgia RICO claims and Georgia securities fraud claims arising out of this alleged invalidity of the shares. Clearly, all those claims should fall based on the explicit ratification, if not for all the other reasons that were previously set forth in defendant's motion for summary judgment and memoranda in support of the motion for summary judgment, and oppositions to plaintiff's motion for summary judgment. Those claims were invalid claims, for the reasons also set forth in defendant's motion for summary judgment, which are adopted here.

Plaintiff contends that Arata was her attorney, although she acknowledged in her deposition testimony that Arata gave her no advice and that he never indicated by any thought, word or duty that he was her attorney. Her basic position is that she thought that since he was representing the corporation, he was also representing the shareholders. There is, of course, a difference between representing "the shareholders" and representing a particular shareholder, particularly when one's interests are adverse to the corporation. Certainly, he was not representing the plaintiff in 1995 and 1997, when the two amendments to the Articles of Incorporation were passed and not filed with the Secretary of State, since she did not even own stock in FyBX until July 1998, a fact which she freely admits. (Deposition of Bergquist, pp.139-140, attached as Exhibit F).

Further, there is evidence that Bergquist consulted David Golden, who had been her attorney since 1993, regarding the merger. Specifically, in her deposition, she admitted that she asked him for tax advice regarding the merger and then refused to answer further questions about her dealings with him, based on her claims and attorney client privilege. Her testimony pertaining to these matters concerning her relationship with Arata is set forth in the motion and defendant's motion for summary judgment, and is adopted herein.

### b. Prescription

Even assuming that Arata was Bergquist's attorney, any and all claims against him would be prescribed and perempted under R. S. 9:5605. Clearly, his allegedly negligent acts in 1995 and 1997 took place more than three years prior to the filing of the lawsuit on May 14, 2001. The issuance of her "merger shares" took place on July 1, 1998. She contends that the agreement of merger and all of the merger documents were signed on May 18, 1998, but were not filed until August 2, 1999. If so, then the claimed acts of malpractice took place when the shares were issued prior to the merger

- 15 -

agreement being filed, i.e., on July 1, 1998. She was certainly aware that she received her shares prior to the merger agreement being filed. She continued to pursue a merger as opposed to the dissolution of FyBX Environmental as discussed in the September 21 - 24, 1998 minutes. *See* Exhibit C. The fact that the merger agreements had been signed and needed to be reviewed by Arata was discussed in a March, 1999 e-mail of which she received a copy. *See* Exhibit D. Prescription and peremption run from the date of the acts, and not from the day that plaintiff consulted the lawyer to determine the effects of those acts.

### c.     The § 12(2) claim

Plaintiff must show that defendant offered to sell or sold her securities, and that the sale was based on a materially false or misleading prospectus. *Pinter vs. Dahl,* 486 U. S. 622, 108 S. Ct. 2063 (1988), held that the lawyers who prepared an offering statement were not sellers for the purpose of Section 12(2), and were thus not liable. See also *Abel vs. Potomoc*, 858 F. 2d 1104 (5th Cir. 1988), cert. denied, 109 S. Ct. 3242 (1989).

Further, there can be no claim against Arata and his law firm for aiding and abetting pursuant to Section 10(B) of the Securities Act of 1934, pursuant to *Central Bank of Denver vs. First Interstate Bank of Denver*, 511 U. S. 164, 114 S. Ct. 1439 (1994). Certainly, plaintiff and her counsel should have been aware of the leading United States Supreme Court cases before filing this lawsuit.

With respect to a Section 10b-5 claim, the plaintiff must establish scienter on the part of the defendant, the materiality of any misrepresentation or omission by the defendant, the extent of actual reliance by the plaintiff on defendant's statement, and the viability of that reliance, that is, the due diligence requirement on the part of the plaintiff.

The testimony of Bergquist was that she did not recall asking Arata anything about the merger, that she did not pay him a fee, that she thought he represented the shareholders, even though she was not a shareholder at the time of the alleged signing of the merger document, that he never gave her any indication that he was representing her as well as the corporation, that she never saw any documents in which he referred to himself as her attorney, or anything but the corporation's attorney, that he never did anything of a personal nature for her, such as write a Will, or draft a deed or do any real estate transactions, so that the only business that he transacted in connection with her was business concerning the corporation, that is, that he merged the two corporations. She testified that she had performed absolutely no due diligence and does not recall anything that she looked at in connection with the merger of the two corporations. (See previous discussions in Arata's memoranda in support of Motion for Summary Judgment.) (Deposition of Bergquist, pp. 100-104, attached as Exhibit F.) Thus, she cannot meet either the reliance or the due diligence requirements of a Section 10b-5 claim. Certainly, plaintiff should have known what her own testimony was going to be regarding this before filing the Complaint.

Further, in *Gustafason vs. Alloyd Company, Inc.*, 513 U. S. 561 (1995), the U.S. Supreme Court held that "prospectus" as a term is confined to a document that must include information contained in the registration statement. The Court held that, by and large, only public offerings by an issue of securities or by controlling shareholders of an issuer require the preparation of the filing of a registration statement. The court held that a written sales agreement was not a prospectus and, hence, there could not be a Section 12(2) action seeking rescission of a private sales agreement on grounds that the written sales agreement was a prospectus and contained material misstatements.

Plaintiff did not purchase her shares pursuant to a prospectus, and cannot claim rescission pursuant to Section 12(2), and, again, she should have known this before filing her claim.

### d. Georgia state law claims

As to the Georgia Securities Law claim and the Georgia RICO claim, defendants successfully argued that the Georgia Federal District Court in the Northern State of Georgia did not have proper venue in this case, because the plaintiff had not properly plead scienter under the Georgia security law. The Georgia court specifically stated:

> The gravamen of plaintiff's amended complaint is that defendant FyBX issued shares of stock in violation of their Articles of Incorporation, thereby rendering these shares worthless, and that defendant Arata and the defendant law firms advised FyBX that this was an inappropriate course of action. The Court noted that nowhere in plaintiff's amended complaint was there any mention that any particular statement by defendants or any dates on which the statements were made. The court held that, assuming that defendants' misrepresented to plaintiff that the merger stock was issued legally, defendants misrepresentations would not be "forward-looking". Therefore, plaintiff would need to allege "particular facts giving rise to a strong inference that the defendant acted in a severely reckless manner". Plaintiff has failed to allege such facts...

The plaintiff's Georgia RICO claim fails because there are no predicate acts alleged as the basis for the RICO claim, except the Georgia securities fraud claim. Since the Georgia securities fraud claim fails for the same reasons that the 10b-5 claim fails, *i.e.* the lack of scienter, lack of due diligence, lack of aiding and abetting as a cause of action, the fact that Arata is not a seller, and the lack of a prospectus, there can be no RICO claim.

Further, the Georgia securities acts claims are prescribed, because there is a two year statute of limitations from the date of contract of sale or date of sales, if there is no contract for sale. The

date of the merger was May 18, 1998, that is, the date of contract of sale. The date of the issuance of the stock was July 1, 1998. This case was not filed until May 14, 2001.

All these legal issues were clearly known to the plaintiff at the time of filing or at the time that the Georgia court granted the defendants' motion with respect to venue, or should have been known to plaintiff by that time. If not known then, those facts were certainly obvious when they were pointed out by defendant Arata in his Motion for Summary Judgment. The plaintiff has continued to waste this Court's time and defendants' time and costs by fighting to prevent the ratification of the shareholders and filing endless briefs with endless half-truths. Nothing could be more telling than plaintiff's attempt to first default defendants and then strike their answers. Since their suit was not meritorious and they knew it, the only way they could succeed was by precluding the consideration of the issues on the merits.

## B. The Conduct of Plaintiffs' Counsel Violates 28 U.S.C. §1927

The conduct of plaintiffs' counsel, specifically, forcing the court to conduct unnecessary proceedings, thereby increasing the cost of proceedings, all arising from an improper purpose or reckless pursuit of meritless claims, provides the Court with a basis for levying sanctions against plaintiffs' counsel pursuant to 28 U.S.C. §1927. *See, In Re Taxable Municipal Bond Securities Litigation*, 1994 WL 34924, at * 3-4, 8-9 (E.D. La. 2/3/94), *aff'd., 51 F.3d 518 (5th Cir. 1995), citing, McGoldrick Oil Co. v. Campbell, Athey & Zukowski*, 793 F.2d 649, 653-54 (5th Cir. 1986); *See also, Ridder v. City of Springfield*, 109 F.3d 288, 297-99 (6th Cir. 1997) (affirming the magistrate judge's order awarding defendant attorneys' fees under 28 U.S.C. §1927 due to plaintiff's pursuit of meritless claims that vexatiously and unreasonably multiplied proceedings). The facts

recounted above, and in defendant's Motion for Summary Judgment and supporting memoranda more than qualify for sanctions pursuant to 28 U.S.C. §1927.

## C.   The Court Has Inherent Power to Sanction Bergquist

In addition to its statutory authority, the Court has inherent power to levy sanctions against plaintiff and her counsel. The "inherent power" argument is based upon the concept that the Court has the power to not only regulate itself, but also to protect the integrity of the judicial process.

The issue of the Court's inherent power to levy sanctions was addressed by the U.S. Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991). In *Chambers*, the petitioner agreed to sell his television station to NASCO, then attempted to renege on the deal. Through a number of steps both within and outside of the context of litigation (including misleading the court on a number of factual issues, placing the property in "trust" after he received notice that litigation would be filed, removing property from the station in violation of court orders and other acts), Chambers attempted to frustrate the consummation of the sale. Following extraordinarily vexatious litigation, the District Court granted NASCO's request for sanctions, and ordered Chambers to reimburse NASCO for *all* attorneys' fees it incurred in the litigation (totaling almost $1 million). Not surprisingly, Chambers appealed, and the case was ultimately heard by the U.S. Supreme Court.

The Court reviewed all the statutory authority that allowed a court to impose sanctions, and determined that in addition to that authority, a Court had "inherent power" to punish a litigant who acts in bad faith before it, or who attempts to perpetrate a fraud. Thus, the Court had the authority to impose the sanction requiring Chambers to pay his opponent's entire legal fees.

In reaching its ruling, the Court noted the traditional "American rule", which prohibits the shifting of attorneys' fees in most cases [citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed. 2d 141 (1975)]. In the instant case, however, the Court determined that because of the extraordinary misconduct of Chambers, both within and outside the litigation (Chambers also attempted to reject the sale by failing to cooperate with FCC requirements), protecting the integrity of the Court and the judicial process itself allowed the Court to impose such an extraordinary sanction, even though Louisiana state law (as it was then constituted) failed to provide a "Rule 11-type" sanctions remedy.

Here, the conduct of plaintiff and her counsel at least equals the conduct of Chambers. In *Chambers*, the petitioner engaged in merely obstructionist acts designed to frustrate a previously agreed-upon sale. Likewise, plaintiff has engaged in obstructionist acts designed to frustrate previous corporate acts and sales of corporate stock. In the process, plaintiff has engaged in rank character assassination, repeated attempts to mislead the Court (even after they have been caught red-handed), and other acts so egregious that the normal limitations on proscribing misconduct are clearly inadequate. Plaintiff's counsel have asserted RICO and fraud claims against Arata and Hoffman, Siegel, accusing them of criminal acts without a scintilla of evidence. These claims are baseless. That is particularly true when Hoffman, Siegel was not even the employer of Arata when these acts took place. Plaintiff's counsel have acted unprofessionally and have been uncooperative. They have continuously stonewalled the defendants when the defendants have requested discovery, but then have turned around and demanded discovery from defendants, even after the passage of the discovery deadline. See discussion in undersigned counsel's opposition to plaintiff's motion for sanctions against undersigned counsel.

Ms. Bergquist and her counsel had an opportunity to withdraw their complaint when the Rule 11 Motion was sent to them on July 3, 2003, pursuant to the Safe Harbour requirements. (Exhibit G) Instead they retaliated by filing a personal attack on undersigned counsel on July 3, 2003, and complains that the Rule 11 motion was sent to them to harass them before the July 4, 2003 weekend.

This Court should impose sanctions against plaintiff and her counsel.

## D. Available Sanctions

Rule 11(c)(2) sets forth the type of sanctions that may be levied:

**(2) Nature of Sanction; Limitation.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.[1]

Fed. R. Civ. Proc. 11(c)(2) (West 1997). As Moore's explains, "[t]he court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities . . . etc." 1997 Moore's Fed. Prac. R. Pamphlet, ¶11.2[2] at p. 141. The award of attorney's fees and expenses is the least severe sanction adequate to serve the purposes of Rule 11 when a suit is found to be wholly frivolous and unwarranted. *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994). The nugatory nature of this case warrants the imposition of the most severe sanctions available under

---

[1]     However, the rule provides that monetary sanctions may not be awarded against a party who is represented by counsel for wrongful representation that the claim is warranted by existing law or a good faith argument for the modification thereof, as such sanctions are more appropriately levied against the attorney. Fed. R. Civ. Pro. 11(c)(2)(A);

Rule 11. At the very least, defendants are entitled to attorney's fees and expenses for having to defend this meritless action.

## III. CONCLUSION

The purpose of a court's sanctioning power is to enable it to ensure its own proper functioning. *Chambers*, 501 U.S. at 43. If plaintiff had her way, this Court would never function, unless, such as with the application for temporary restraining order, she sought to have the court function for her own improper purposes. It is not the purpose of this Court to enable a party to gut a corporation by second guessing everything a corporation ever did, *even when she participated in many of the acts she is second guessing.* Plaintiff's conduct must end, and end here.

Respectfully submitted,

**DEUTSCH, KERRIGAN & STILES, L.L.P.**

BY: _____
    **NANCY J. MARSHALL (#8955)**
    **ANNE B. RAPPOLD (#26829)**
      755 Magazine Street
      New Orleans, Louisiana 70130
      Telephone: (504) 581-5141
      Counsel for **Michael P. Arata and Hoffman, Seigel, Seydel, Bienvenu, Centola & Cordes**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this 14 day of August, 2003.

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

K. TRACY BERGQUIST,
on behalf of herself and all other
shareholders of FyBX Corporation

      **Plaintiff**

v.                              **Civil Action No.**

FyBX CORPORATION, MICHAEL    **02-722**
P. ARATA, HOFFMAN, SIEGEL,
SEYDEL, BIENVENU, CENTOLA    **SECTION "R (4)**
& CORDES (A PROFESSIONAL
LAW CORPORATION), and
BORDELON, HAMLIN & THERIOT

      **Defendants**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*

## Notice of Hearing ~~ORDER~~

Considering the MOTION FOR SANCTIONS PURSUANT TO RULE 11 AND 28 U.S.C. 1927 filed by Michael Arata and Hoffman, Siegel, Seydel, Bienvenu, Centola & Cordes, in the above-numbered and entitled cause:

IT IS ~~ORDERED~~ *Noticed* that the Motion for Sanctions be and is hereby set for hearing on the **3**rd day of **September, 2003.**

New Orleans, Louisiana, this _____ day of August, 2003.

                                 _____

                                United States District Judge

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**